## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

Frances M. Jenner,

        Plaintiff,

    v.

Nancy A. Berryhill,
Acting Commissioner of
Social Security,

      Defendant.

Civil Action No. 3:18-507

(Judge Mannion)

---

## MEMORANDUM

### I.   Procedural Background.

We consider here the appeal of Plaintiff Frances M. Jenner from an adverse decision of the Social Security Administration ("SSA") or ("Agency") on her application for Disability Insurance Benefits ("DIB"). Plaintiff's application alleges a period of disability beginning March 1, 2014. Her application was denied at the administrative level whereupon she requested a hearing before an administrative law judge ("ALJ"). Plaintiff received a hearing before ALJ Scott M. Staller on February 14, 2017. The ALJ issued a written decision denying Plaintiff's claim on June 19, 2017. (Doc. 8-2, 9-22). Plaintiff then requested further review by the Appeals Council that was denied pursuant to letter dated February 5, 2018. (Doc. 8-2, 2-6). The Appeals

Council's decision constitutes a final decision of the Agency and vests this Court with jurisdiction pursuant to 42 U.S.C. §405(g).

## II.    Hearing Testimony.

Present at the hearing of February 14, 2017 were the claimant, her attorney, and vocational expert ("VE") Sheryl Bustin. The testimony may be summarized as follows.

Plaintiff was born on September 14, 1961 and was fifty-five years of age on the date of the hearing. She is right hand dominant and is able to drive. She is a high school graduate via GED. (R. 30-31).

In the years 2002 through March of 2014, Plaintiff worked for Fry Communications as a mail handler. In that employment she loaded machines, moved and skidded books, moved skids in and out of her work area, and boxed books. The job required some degree of agility and strength and sometimes demanded that she would lift boxes weighing as much as forty pounds. (R. 32).

Plaintiff has not worked since March 21, 2014, the date she underwent a carpal tunnel release on her right hand. She received workers' compensation benefits for some time after March 21, 2014 and ultimately settled that claim. She stated that she is still having problems with her hands in the form of pain

and difficulty manipulating zippers and buttons. She frequently drops things. Her pain intensifies as she uses her hands more frequently. (R. 32-33).

She lives with her husband and three grandchildren. She cooks meals twice each day. She is able to bathe herself, dress herself, and do housework such as dusting, cleaning, and vacuuming. She shops for groceries. She goes for a large order of groceries once a month and then buys other things as needed before the next large order is necessary. She does not have problems picking up her groceries but her hands do hurt when she handles items such as a gallon of milk. Her only hobby is selling items on eBay but she can only use the computer for about five minutes at a time before her hands begin to bother her. She does not sleep as well as she used to due to her hand symptoms. These often wake her up in the middle of the night. She estimates that she gets four to five hours sleep each night. The only medication she takes is designed to reduce her cholesterol and she experiences no side effects from it. (R. 33-36).

On examination by her attorney, Plaintiff stated that she drops objects frequently and experiences pain in her hands when doing dishes or using the vacuum cleaner. She no longer depends on her fine motor skills because of a lack of feeling in her hands. Her grip strength is not good. She experiences pain in the "meaty part" of both palms and doing just about anything

aggravates this pain. This pain is bilateral but slightly worse in her right hand. (R. 37).

To address her hand symptoms she just stops what she is doing until the pain subsides. She has had physical therapy in the past but she decided that it was doing her more harm than good. She has been prescribed pain medications by her doctor but is reluctant to take them because she must be alert to take care of her three grandchildren and because her daughter became addicted to opioids and died of an overdose. She cannot hold her grandchildren as she formally did due to her hand symptomology. When she cooks her husband helps her by handling heavy pots and pans and stirring dishes that require that sort of attention. She still vacuums and does dishes but moves more slowly than before her surgeries. She still drives but must constantly change the position of her hands on the steering wheel to prevent pain. (R. 38-40).

Sheryl Bustin, a vocational expert, also testified. Ms. Bustin described Plaintiff's past relevant work as that of a "laborer stores". Ms. Bustin described that work as medium exertional level, both customarily and as actually performed by Plaintiff. (R. 41). The ALJ asked Ms. Bustin to respond to a hypothetical question that required her to assume a person Plaintiff's age at onset (52) with a GED and the same work history as the Plaintiff. She was

also asked to assume that the hypothetical person could perform unskilled work at no greater that medium level and could perform frequent handling and fingering bilaterally. Based on those assumptions, Ms. Buston testified that the hypothetical individual could perform Plaintiff's past work as a "laborer stores". Ms. Buston also indicated that if the hypothetical individual was reduced to light work with the same restrictions the ALJ had identified, she could not perform Plaintiff's past relevant work. However, Ms. Buston stated that the hypothetical individual could perform light work with the same restrictions in such occupations as "cleaner housekeeper", "bakery worker conveyer line", and "machine tender laminating". Ms. Bustin stated that each of those jobs existed in significant numbers in the national economy. When the ALJ asked if the hypothetical person could perform those jobs if capable of only "occasional" handling and fingering, Ms. Bustin responded that the bakery worker and machine tender jobs would both remain available. The ALJ then asked whether any jobs at any exertional level could be performed if the hypothetical person would be off task more than fifteen percent of the workday or would likely miss two or more days each month. Ms. Bustin replied that in either case such a person could not maintain employment. (R. 41-43).

Plaintiff's attorney asked Ms. Bustin whether any of the jobs she had identified would be appropriate for an individual who could not finger or handle

objects at all. Ms. Bustin answered that those jobs would not be available to such a person. Finally, Ms. Bustin indicated that there are jobs, such as "surveillance system monitor" and "greeter" that can be performed by individuals who cannot finger or grasp at all. However, these jobs are performed at the sedentary level according to Ms. Bustin. (R. 43-44).

## III.    Medical Testimony.

### 1.    Dr. Mohammed Ismail.

Plaintiff initially saw Dr. Ismail, a neurologist, in February of 2014 with complaints of bilateral pain and numbness in her hands. Plaintiff reported that these symptoms were worse in her right hand than in her left and self-assessed her pain level as four to five on a scale of ten. Plaintiff also reported that "her right hand palm, index, and middle fingers go numb and tingly" and that she sometimes awakens in the middle of the night with numbness in her hands.

Dr. Ismail's examination of Plaintiff confirmed pain and numbness in both hands. Plaintiff exhibited a positive Tinel's sign in her right wrist and had a "subjective sense of paresthesia in the median nerve distributions in her hands." Dr. Ismail performed an EMG examination on February 12, 2014 that demonstrated "moderate median compressive neuropathy of the right and

mild median compressive neuropathy in the left." Dr. Ismail opined that Plaintiff's symptoms were due to bilateral carpal tunnel syndrome and recommended that she would benefit from surgery. (R. 323-331).

### 2. Dr. Craig Fulz.

Dr. Ismail referred Plaintiff to Dr. Fulz, an orthopedic surgeon for relief of her bilateral carpal tunnel syndrome. Dr. Fulz performed a right carpal tunnel release on Plaintiff on March 21, 2014 and a left carpal tunnel release on her on May 5, 2014. An office note on May 27, 2014 indicated that Plaintiff reported "making progress with both hands" but that she continued to complain of scar sensitivity and slow improvement in her hand strength. Dr. Fulz prescribed additional physical therapy at that time. (R. 250-284).

On July 22, 2014, Dr. Fulz saw Plaintiff for a follow-up examination. At that time, Plaintiff complained that her hands were both still painful and that her right thumb was "catching". Dr. Fulz assessed that swelling from the Plaintiff's surgery was causing stenosing tenosynovitis (trigger finger) in her right thumb. (R. 356-359).

### 3. Stacey Humes.

On referral from Dr. Fulz, Plaintiff saw Stacey Humes, a physical therapist, for twenty-five sessions from May through August of 2014. Throughout this time Ms. Humes' progress notes indicate that Plaintiff

complained of incisional tenderness, shooting pains bilaterally, right thumb triggering and locking, and difficulty sleeping. On June 19, 2014, Ms. Humes noted that Plaintiff "appears to have pillar pain." On July 21, 2014, some three to four months post surgeries, Plaintiff was still experiencing "significant weakness bilaterally" with her right hand worse that her left. (R. 285-319).

### 4. Dr. Lisa Myers.

Dr. Myers, Plaintiff's primary care physician, assumed care of Plaintiff's hand treatment on August 29, 2014 and continued to treat her through January of 2017. During this time, Dr. Myers saw Plaintiff on no fewer than ten occasions. Dr. Myers' office notes reflect that during this entire time Plaintiff complained of shooting pain in both her hands and forearms when lifting. Dr. Myers noted on several occasions that Plaintiff's grip strength was poorer on the right than on the left and that grasping activities produced pain bilaterally.

On February 22, 2016, Dr. Myers opined that Plaintiff's symptoms fit the profile of pillar pain, a condition Plaintiff's physical therapist, Stacey Humes, had noted some twenty months earlier.[1] Dr. Myers also stated that Plaintiff

---

[1] "There are two types of pain that occur in the palm of the hand after carpal tunnel surgery: incisional pain and pillar pain. …Pillar pain is the pain experienced to the sides of the incision in the thicker parts of the palm, called the thenar and hypothenar eminence. Pain in these regions is where the attachments of the transverse ligament to the carpal bones (forming the carpal
*(footnote continued on next page)*

experiences "persistent bilateral hand pain and weakness status post carpal tunnel release. Her clinical exam and history is consistent with pillar pain syndrome and is unlikely to improve." (R. 347).

On January 26, 2017, Dr. Myers completed a Medical Source Statement assessing Plaintiff's physical capacities. She opined that Plaintiff: could lift no more than five pounds occasionally due to pain upon gripping objects, reduced sensation in her hands and reduced vibratory sensation due to pillar pain syndrome; could push or pull no more than five pounds due to pain and decreased grip strength; and would be unable to climb ladders, crawl, finger, handle or feel due to reduced ability to grasp and decreased sensation in her palms and fingers. Dr. Myers also observed that Plaintiff had difficulty buttoning, zippering, and operating keyboards and opined that she should not use machinery due to the fact that her reduced tactile sensation subjected her

---

tunnel) are located. In addition, the muscles of the palm of the hand are located here. Pillar pain is the more common and troublesome complication of carpal tunnel surgery and may take several months to resolve." www.verywellhealth.com/complications-of-carpal-tunnel-surgery. Another resource states: " 'Pillar pain' is a relatively frequent complication after surgical release of the median nerve at the wrist. Its etiology still remains unknown although several studies highlight a neurogenic inflammation as a possible cause. Pillar pain treatment usually includes rest, bracing and physio- therapy, although a significant number of patients still complain of painful symptoms two or even three years after surgery." www.ncbi.nlm.nih.gov/pubmed/21856074.

to a heightened risk of injury. Dr. Myers also indicated that Plaintiff's level of pain would frequently interfere with her attention and concentration. Finally, Dr. Myers stated that Plaintiff's symptomology would result in her missing more than three days of work each month and that Plaintiff had not been capable of performing any sustained work since March 21, 2014. (R. 350-355).

### 5. Dr. Spencer Long.

The SSA referred Plaintiff to Dr. Long for purposes of an internal medicine examination. Dr. Long took an oral history from the Plaintiff and performed a clinical examination on October 6, 2015. Relevant findings of his examination included: decreased hand and finger dexterity; grip strength reduced to 4/5 bilaterally; and difficulty with zippering, buttoning, and tying. Dr. Long diagnosed bilateral hand pain and weakness status post bilateral carpal tunnel surgery. He assigned Plaintiff a prognosis of "fair". (R. 334-336).

Dr. Long also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on the same day that he examined the Plaintiff. Dr. Long found that Plaintiff: could occasionally lift and carry up to ten pounds; could sit up to eight hours, stand up to two hours, and walk up to two hours in an eight hour workday; could never perform pushing or pulling actions with either hand, occasionally handle and finger with either hand, and

frequently reach and feel with either hand; could never climb ladders or scaffolds, occasionally crouch and crawl, and frequently climb stairs or ramps, balance, stoop and kneel; and could never be exposed to heights, moving machinery, or extreme heat or cold. Dr. Long also found that the limitations he had identified could be expected to last for twelve consecutive months. (R. 337-342).

### 6. Dr. Robert Maurer.

On October 31, 2014, Dr. Maurer performed an independent medical examination of Plaintiff at the request of Plaintiff's employer. The examination was done in connection with Plaintiff's worker's compensation claim. Dr. Maurer opined that Plaintiff "had fully and completely recovered from her bilateral carpal tunnel release surgery." He indicated further that Plaintiff could return to work without any restrictions. He also executed a form entitled Physical Capacities Check List Upper Extremities whereon he indicated Plaintiff could use her hands, arms, and shoulders to push, pull, carry and lift up to fifty pounds continuously. Dr. Maurer also found that Plaintiff was capable of "very heavy work" involving lifting objects of more than one hundred bounds and frequent lifting or carrying of up to fifty pounds. Dr. Maurer also stated that Plaintiff's ability to use her hands was without

limitation in terms of grip strength, median dexterity, and fine manipulation. (R. 380-385).

## IV.  ALJ Decision.

The ALJ's decision of June 19, 2017 (Doc. 8-2, 9-22) was unfavorable to the Plaintiff the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since March 21, 2014, the alleged onset date.

3. The claimant has the following severe impairment: carpal tunnel syndrome.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,
   Subpart P, Appx. 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in

20 C.F.R. 404.1567(c) except she can frequently handle (close manipulation) objects with the bilateral upper extremities; and she can frequently finger (fine manipulation) with the bilateral upper extremities.

6.  The claimant is capable of performing past relevant work as a laborer, stores. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.  The claimant has not been under a disability, as defined in the Social Security Act, from March 21, 2014 through the date of this decision.

## V.  Disability Determination Process.

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for the Commissioner to

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

*(footnote continued on next page)*

ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that

---

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §423(d)(2)(A).

a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (Doc. 8-2 at 21).

## VI. Standard of Review.

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla". It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence

substantial if it is overwhelmed by other evidence–-particularly certain types of evidence (e.g., that offered by treating physicians)–-or if it really constitutes not evidence but mere conclusion. *See Cotter*, 642 F.2d at 706 ("Substantial evidence" can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake

an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be

deemed harmless.  *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision.  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## VII.  Discussion

### A. General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits.  *See Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim.  *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d

Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

### B. Plaintiff's Allegations of Error.

Plaintiff asserts that the ALJ erred in two respects that require that this case be remanded for further evaluation.[3] We find that these alleged errors combine to require the Court to answer one pivotal question: whether the ALJ's determination of Plaintiff's residual functional capacity ("RFC") is supported by the requisite substantial evidence. For the reasons that follow, the Court concludes that this case must be remanded for further consideration.

The Agency's regulations require an ALJ to consider the symptoms of both medically determinable severe and non-severe impairments. See 20

---

[3] One of Plaintiff's assertions of error is that the ALJ failed to find that her pillar pain constituted a "severe impairment". Based upon the existing record, the Court cannot conclude that Plaintiff is necessarily correct in this regard. Nevertheless, as discussed in the primary text above, the ALJ's failure to even discuss pillar pain is problematic.

C.F.R § 404.1529. All medical impairments, whether they be severe or non-severe, must be considered at both step 2 and step 4 of the Agency's self-imposed claims evaluation process when determining a claimant's RFC. Numerous Courts in our district have noted the explicit content of the regulations and have held the Agency to the standards. See, *e.g. Shedden v. Astrue,* 2012 WL 760632 (M.D.Pa. March 7, 2012) (Rambo, J.); *Christensen v. Astrue*, Civ. No. 10-1192, slip. op. at 12 (M.D.Pa. May 18, 2011) (Muir, J.); *Little v. Astrue*, Civil No. 10-1626, slip. op. at 19-21 (M.D.Pa. September 14, 2011) (Kosik, J.); and *Crayton v. Astrue*, Civ. No. 10-1265, slip. op. at 32-35 (M.D.Pa. September 27, 2011) (Caputo, J.).

In this case the ALJ failed to note the existence of Plaintiff's pillar pain syndrome, a diagnosis that is obvious on the face of this record. Thus, there was no discussion whether Plaintiff's pillar pain, as documented by Dr. Myers, constituted a minor or major impairment. The Government argues (Doc. 14 at 6-9) that the ALJ's failure to discuss Plaintiff's pillar pain syndrome is inconsequential because the ALJ thoroughly discussed Plaintiff's hand symptoms arising from bilateral carpal tunnel syndrome and subsequent surgeries. This, the Government argues, somehow vindicates the ALJ's apparent finding that Plaintiff's pillar pain syndrome produces no impairment whatsoever. However, the responsibility of a district court on appeal of an

ALJ's decision is to review only evidence relied upon by the ALJ because neither the Defendant nor the reviewing Court can do what the ALJ should have done -- neither can provide *post hoc* reasons for supporting the decision. *Fargnoli v. Massanari*, supra at 42. Accordingly, the Government's attempt to claim "harmless error" here is unavailing. In light of the medical literature's documentation: (1) that pillar pain syndrome often results from carpal tunnel surgery but is not synonymous with it, and (2) that pillar pain can continue for up to three years after carpal tunnel surgery (see pages 8 & 9, *ante*), a detailed explanation was required for the ALJ's decision to accord "great weight" to Dr. Maurer's October 31, 2014 opinion[4] that Plaintiff had completely recovered and "little weight" to both the February 22, 2016 assessment of Dr. Myers that Plaintiff was "unlikely to improve" and Dr. Myers' January 26, 2017 Medical Source Statement that indicated physical capacities far less robust than those indicated in the ALJ's RFC determination. Moreover, Dr. Myers, a long time treating physician whose opinion was informed by her observations

---

[4] Dr. Mauer, who saw Plaintiff on one occasion to perform an "independent medical examination" in the context of a worker's compensation case, reached the remarkable conclusion that Plaintiff, a "slender, pleasant, cooperative female" 53 years of age, could perform very heavy work" involving lifting objects weighing one hundred pounds and could frequently lift or carry objects weighing fifty pounds or more. (R. at 381-385).

and treatment of Plaintiff over an extended period of time, is not a voice crying in the wilderness here. Her opinion of Plaintiff's condition and physical capacities was confirmed to a significant degree by Dr. Spencer Long, an examining, consulting physician hired by the Agency, based on his clinical examination of the claimant on October 6, 2015.

Thus, Plaintiff's symptomology and its limiting effects were documented first by a treating physician and then by an examining, consulting physician for years beyond Dr. Maurer's one session with Plaintiff in October of 2014. This concerns the Court for three reasons: (1) Dr. Myers' status as a long time treating physician; (2) the Agency's rejection of the medical opinion of the physician (Dr. Long) it retained to evaluate Plaintiff; and (3) the ALJ's failure to mention, much less discuss, Plaintiff's documented history of pillar pain. Consequently, the validity of the ALJ's RFC determination is called into serious question. Because the Court cannot reasonably conclude that substantial evidence supports the ALJ's RFC determination, this matter must be remanded to enable the Agency to secure an additional, updated evaluation from an examining, consulting physician and to conduct further proceedings consistent with this opinion.

## VIII. Conclusion.

For the reasons discussed above, this case will be remanded to the Commissioner of the Social Security Administration to expand the record to include a consultative examination by an acceptable medical source directed to ascertaining the degree of impairment, if any, caused by Plaintiff's pillar pain syndrome. Upon receipt of the consultative examiner's opinion, the Agency shall reevaluate this case. An Order consistent with this determination will be filed contemporaneously.

*Malachy E. Mannion*
**MALACHY E. MANNION**
**UNITED STATES DISTRICT JUDGE**

**Dated: November 27, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2018 MEMORANDA\18-507-01.docx